[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Leroy Favrow and Lucy Favrow, appeal, pursuant to General Statutes § 22a-43 (a), from a February 20, 2001 final decision of the Town of Newington Conservation Commission ("the commission")[1] declaring a previously issued permit to conduct activities in an inland wetlands area null and void.
The record shows as follows. The backyard to the plaintiffs' home in Newington runs across Mill Brook, so that the plaintiffs' property is on both sides of the brook. The plaintiffs, allegedly concerned about a neighbor's cutting of brush and grass down to the bank of the brook, installed a boundary marker of metal posts and plastic mesh netting along the bank on the farther side of their property. (Return of Record ("ROR"), Items 2, 6, 19, 38 (two photographs, attached to brief of plaintiffs)).
On September 8, 1999, the commission notified the plaintiffs that their fence was in violation of the town's inland wetland and watercourse regulations and ordered the plaintiffs to cease and desist. On May 31, 2000, the commission filed suit against the plaintiffs to enforce their cease and desist order and to find the plaintiffs in contempt. (Appeal, ¶¶ 2, 3; ROR, Items 2, 6.)
On July 18, 2000, in an attempted resolution of the commission s suit, the plaintiffs applied to the commission for a permit to conduct the fencing activities in the Mill Brook wetland's area. (ROR, Item 19.) A public hearing was held on the plaintiffs' application on September 19, 2000 and closed on October 17, 2000. A view of the premises was conducted on October 17, 2000. (ROR, Items 6, 7, 9.)
At the September 19, 2000 hearing, the plaintiffs were met with opposition to the fencing by adjacent neighbors. The neighbors wanted a condition on any permit that would require the fence to be maintained by the plaintiffs, so that debris trapped in the fence was cleared away. They were also concerned about the aesthetics of the fence. A spokesman from the state department of environmental protection ("the department") opposed fencing, but favored vertical posts to mark the boundary. According to the department official, the existing fencing made tree CT Page 658 maintenance difficult. (ROR, Item 6.)
At the October 17, 2000 commission meeting, the hearing was concluded and the members discussed the issue of the permit. Alternate Harasymiw urged the plaintiffs and the neighbors to agree on a wooden fence or vegetation. He also suggested that the plaintiffs be given different options so that the plaintiffs might explore costs. Commissioner Nafis noted that the factors to be taken into account in issuing a permit were flooding within the area, the effect on the movement of wildlife, children getting stuck in mud and overall effect on aesthetics. While the plaintiffs were asking for a permit for a specific type of fence, the commission, in granting the permit, should give alternatives to the plaintiffs so that they can meet the commission's standards. (ROR, Item 9, pp. 5-7.)
On November 21, 2000, the commission voted unanimously to issue a permit to the plaintiffs. There were a series of conditions, however, including:
 B. FAILURE TO COMPLY WITH ANY CONDITION OF THIS PERMIT SHALL AUTOMATICALLY REVOKE THIS PERMIT U AND/OR SUBJECT THE APPLICANT, HEIRS, SUCCESSORS AND ASSIGNS TO THE ENFORCEMENT AUTHORITY OF 1THE COMMISSION.
 *** F. The Commission finds that the construction type fence being proposed by the applicant to be not acceptable to the Commission because it is considered not to be compatible with the indigenous nature of the area. The fence [now existing] shall be removed at a time to be determined by the Commission.
 G. The Commission finds the utilization of concrete mere stones, marker posts similar to type used by DEP in the area, a split rail 1type wood fence with wood posts or acceptable plants or shrubs as a feasible and prudent alternative which it considers to be K compatible with the indigenous nature of the area taking into aesthetics. account such factors as flooding, movement of wildlife, safety and aesthetics.
 H. The applicant shall come back to the Commission no later than the February 2001 monthly meeting for approval of the alternative selected from condition "G". Said alternative shall be installed no later than July 1, 2001. If either one of these dates is missed by the applicant, this permit shall become null and void and the fence shall be immediately removed.
CT Page 659
(Emphasis in original.) (ROR, Item 11, p. 6.)
As noted above, in condition H, the commission required the plaintiffs to appear again at its February 2001 monthly meeting. On February 20, 2001, the plaintiffs were present at the commission's duly-noticed meeting. When asked if they had selected a fencing option from condition G, the plaintiffs replied that their "proposal is to leave the existing (construction) fence in place and extend the same type of fence (northeast) approximately 80 feet as outlined in the field during the field trip." (ROR, Item 13, p. 3.) Commissioner Golda noted that the plaintiffs were in violation of condition H of the permit. The commission voted unanimously to "make a finding of fact that [the plaintiffs], the permit holders . . . have failed to comply with Condition "H" of the permit and therefore determines [the permit] to be null and void." (ROR, Item 13, p. 4.)
The plaintiffs have appealed from the final decision of February 20, 2001, declaring their permit null and void. As the plaintiffs' permit was voided, aggrievement is found. Huck v. Inland Wetlands WatercoursesAgency, 203 Conn. 525, 530 (1987) (fact that agency's decision resulted in denial to the plaintiff-landowner of ability to use his property as he proposed established aggrievement).
The first issue before the court on this appeal is whether the plaintiffs may include a challenge to the terms of the November 21, 2000 order. Regarding this order, the plaintiffs contend that the commission did not have jurisdiction over their fence-building activities under the state inland wetlands statutes and did not promulgate any regulations giving it such jurisdiction. They also claim that the alternatives set forth in permit condition G, ROR, Item ii, were improperly set, once the commission found that the fencing was not likely to have an adverse impact on the wetland. The plaintiffs did not appeal, however, after the November 21, 2000 decision was rendered.
Our Supreme Court has stated that a party cannot bring a subsequent appeal challenging conditions in a zoning permit when it did not timely appeal from the permit itself, setting forth the disputed conditions. "[W]e have ordinarily recognized that the failure of a party to appeal from the action of a zoning authority renders that action final so that the correctness of that action is no longer subject to review by a court. Haynes v. Power Facility Evaluation Council, 177 Conn. 623,629-30, 419 A.2d 342 (1979); see Beit Havurah v. Zoning Board ofAppeals, 177 Conn. 440, 418 A.2d 82 (1979)." Upjohn Co. v. Zoning Board ofAppeals, 224 Conn. 96, 102 (1992). R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 36.4, p. 233 CT Page 660 summarizes the law as follows: "The concept of finality of judgments also comes up where a party that could have pursued an appeal fails to do so and attempts to raise similar issues in another type of proceeding. The cases hold that this cannot be done."
Here, the commission approved the permit with conditions on November 21, 2000. Condition B stated that the permit would be void if any of the conditions were not met. Condition F rejected the plaintiffs' proposal to continue use of the current fence and stated that it must be removed at a time to be determined by the commission. Condition G set forth several alternatives for fencing and condition H required the plaintiffs to return at the commission's February meeting to select an alternative from condition G.[2] This November decision clearly asserted the jurisdiction of the commission to regulate the plaintiffs' activity in the wetland and in granting the permit, ordered remedial steps.[3]
Under Upjohn and like cases, the plaintiffs are now precluded in this administrative appeal from arguing that the commission improperly regulated the plaintiffs' fencing activity. In a case from another jurisdiction, an administrative finding by a wetlands body, not appealed, was preclusive to a subsequent court challenge. North Berwickv. Jones, 534 A.2d 667 (Me. 1987).
The only issue to be considered by the court therefore is whether the commission correctly declared the permit null and void for failure of the plaintiffs to specify an alternative. This is determined by the "trial court [searching] the record of the agency hearings to determine whether there was an adequate basis for the inland wetlands commission's decision. Milardo v. Inland Wetlands Commission, 27 Conn. App. 214,217-18, 605 A.2d 869 (1992)." Forsell v. Conservation Commission,43 Conn. App. 239, 243-44 (1996); see also Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 539-42.
The court finds that there was substantial evidence to support the decision of the commission. In the course of obtaining the permit, the plaintiffs were given options by the commission, but refused to accept them. As the court recently stated in Prestige Builders v. InlandWetlands Commission, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 072904 (October 19, 2001, Ripley, J.), cert. granted January 1, 2002: "[T]he statute Sec. 22a-41 (b)(2)[4] which provides that the commission note feasible and prudent alternatives does not shift the burden from the applicant to prove that he is entitled to the permit or to present alternatives to the proposed regulated activity."
The appeal is therefore dismissed. CT Page 661
Henry S. Cohn, Judge