JAMES E. HAYNES ET AL. *v.* POWER FACILITY EVALUATION COUNCIL ET AL.

COTTER, C. J., BOGDANSKI, LONGO, PETERS and RUBINOW, Js.

Argued April 11—decision released June 5, 1979

*Fred B. Rosnick,* for the appellants (plaintiffs).

*Anthony M. Fitzgerald,* for the appellee (defendant Connecticut Light and Power Company).

*William B. Gundling,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (named defendant).

BOGDANSKI, J.  On October 5, 1977, the plaintiffs filed an appeal with the Court of Common Pleas in which they alleged that they were aggrieved by certain orders of the defendant Power Facility Evaluation Council (hereinafter the council).  From the action of the court in sustaining pleas in abatement filed by the council and the defendant Connecticut Light and Power Company, the plaintiffs have appealed to this court claiming that the court erred in finding that their appeal was not timely filed and in concluding that they had failed to establish aggrievement as required by § 4-183 of the General Statutes.

Before we address ourselves to these issues, however, we must set out, in some detail, the factual background of the present controversy, in order to put into perspective the particular sequence of events which led to the filing of the instant appeal.

The council was established in 1971 as part of the Public Utility Environmental Standards Act (hereinafter the act).  General Statutes §§ 16-50g et seq.  This act, by its terms, is intended to "provide for the balancing of the need for adequate and reliable public utility services . . . with the need to protect the environment and ecology of the state and to minimize damage to scenic, historic, and recreational values." § 16-50g.  Pursuant to that purpose, § 16-50k of the act provides that no entity,

public or private, however organized, shall exercise any right of eminent domain in connection with the construction of a power facility, i.e., an electric generating or storage plant, a transmission line, or a substation, without first having obtained a certificate of environmental compatibility and public need from the council. Sections 16-50*l* and 16-50m of the act, in turn, detail the procedural requirements for the public hearings to be held upon such applications, while § 16-50n lists the categories of "persons" who may participate in such proceedings as parties.

On December 30, 1975, the Connecticut Light and Power Company (hereinafter the company) applied to the council for a certificate of environmental compatibility and public need in connection with the intended construction of a second overhead transmission line between the company's Shepaug and Bates Rock substations. In its application, the company stated that the new line, which was to be constructed parallel to the existing line, would require widening of the existing 100 foot right-of-way by approximately fifty feet to the west and north except through Heritage Village where no widening of the right-of-way would be necessary.

In accordance with the statutory provisions, public hearings on the application were held in April and May of 1976. Several of the present plaintiffs[1] participated in those hearings as parties of record. James E. and Sibyl M. Haynes, as owners of property affected by the proposed widening of the right-of-way, testified in opposition to the company's application. On October 26, 1976, the council granted the application, and copies of its findings, decision and order were mailed to all parties of record on

---

[1] James E. and Sibyl M. Haynes and David Driscoll.

October 28, 1976. On November 10, 1976, the council issued a certificate of environmental compatibility and on November 17, 18 and 19 the council's order was published, as required by § 16-50p (c) of the statute.

At the time the October 25, 1976 decision was published, § 16-50q provided that judicial review could be initiated by the filing of a petition with the Court of Common Pleas within thirty days after the publication of such order. Although the plaintiffs, as parties of record, had a statutory right to appeal from the order granting the certificate, no appeal from the October 25 decision was taken.

Subsequently, on June 17, 1977, the company, acting pursuant to §§ 16-50k (c) and 16-50m (b) of the act, filed an application with the council, seeking permission to amend the November 10 certificate in certain respects. In this application the company requested permission to use single column poles rather than H frame wood structures along a portion of the proposed route, thereby reducing the widening of its right-of-way from fifty feet to thirty feet. The company also sought permission to reduce the number of steel support poles along the crossing through Heritage Village from four to three.

In July the plaintiffs Haynes, Alice Lawhon and Fred B. Rosnick asked to be made parties to the proceedings upon the application for amendment in order to offer evidence in favor of the proposed changes on the ground that these changes would result in a better or lesser environmental impact. They also requested that public hearings be held upon the application. At a duly noticed meeting held on August 17, 1977, at which the plaintiffs were present, their request that public hearings be held

was denied on the ground that the changes sought would not, in the opinion of the council, result in any material increase in environmental impact, nor result in substantial change in the location of all or a portion of the facility.[2]  The council then granted the application for amendment in an order and decision dated August 17, 1977.

On October 5, 1977, the plaintiffs appealed to the Court of Common Pleas alleging that they were aggrieved by certain orders and decisions of the council.  In their prayer for relief they requested that *"all* certificates . . . issued by the [council] . . . with respect to [the construction of the second transmission line between the company's Shepaug and Bates Rock substations] be declared null and void."  (Emphasis added.)

The defendants filed pleas in abatement alleging that, under the statutes,[3] a party seeking to appeal is required to establish that he was aggrieved by a decision rendered in a contested case; that the plaintiffs were not aggrieved by the decision upon the application for amendment; that the action of the

---

[2] Section 16-50m (b) provides in part that pubic hearings upon an application for amendment shall be held in the same manner as upon the original application for certification *"if* the change to be authorized . . . would, in the opinion of the council, result in any material increase in [the] environmental impact of such facility, or would, in the opinion of the council, result in a substantial change in the location of all or a portion of the facility."  (Emphasis added.)

[3] In October of 1977, when the plaintiffs filed their appeal, § 16-50q provided that a party could obtain judicial review of an order issued on an application for a certificate or an amendment of a certificate "in accordance with the provisions of § 4-183 [of the Uniform Administrative Procedure Act]."  Section 4-183, in turn, provides that any person "who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal . . . [and that proceedings] for such appeal shall be instituted by filing of a petition in the court of common pleas . . . within thirty days after mailing of the notice of the final decision of the agency . . . ."

council upon the application for amendment was not a decision in a contested case; and that the plaintiffs had not filed their appeal within the time set by the applicable statutes. The trial court found the issues for the defendants and sustained the pleas in abatement.

From the evidence before it, the court found that the plaintiffs Haynes, Lawhon and Rosnick are owners of property over which the company's existing right-of-way extends; that the plaintiff Driscoll is the owner of a condominium unit in the vicinity of the proposed line, and that the council's decision of October 25, 1976, authorized the construction of a transmission line on, over or close to property owned by the various plaintiffs. The court further found that the council's decision of August 17, 1977, did not authorize the construction of a transmission line on, over or close to property owned by the plaintiffs but merely authorized certain changes in the construction previously authorized by the decision of October 1976, and that the changes authorized by the August 17, 1977 decision would have no effect whatever upon the interests of Rosnick or Driscoll, while actually reducing by twenty feet the impact upon the property of the plaintiffs Haynes and Lawhon.[4]

On the basis of those findings the court concluded that the injury to the interests of the plaintiffs, if any, occurred as the result of the October 1976 deci-

[4] The plaintiffs, as previously noted, sought to be made parties to the proceedings upon the application for amendment in order to offer evidence *in favor of* the amendment on the ground that the thirty foot widening of the right-of-way, instead of the previously authorized fifty foot widening, would have a better impact on the environment. Under these circumstances, it is difficult to understand how the plaintiffs can now argue that they were aggrieved by the council's granting of the application for amendment.

sion; that no appeal from that decision having been taken, that decision had become final and was no longer subject to review; and that the plaintiffs were not aggrieved by the August 17, 1977 decision in that their interests had not been *adversely* affected by that decision. See *Old Rock Road Corporation* v. *Commission on Special Revenue,* 173 Conn. 384, 387, 377 A.2d 1119 (1977). In its memorandum of decision the trial court noted that unless the plaintiffs were permitted to "piggyback" their appeal from the October 1976 decision upon their appeal from the August 1977 decision, the pleas in abatement would have to be sustained.

In an attempt to get around the problem caused by their failure to appeal from the 1976 decision of the council, the plaintiffs argued that the proceedings upon the proposed amendments were merely a "continuation" of the earlier proceedings; that the filing of the application for amendment had "reopened" the decision granting the certificate; and that the plaintiffs should be permitted judicial review of *both* the October 1976 and the August 1977 decisions by way of their October 1977 appeal. This claim, for which the plaintiffs cite no authority, was rejected by the trial court.

Although this precise claim has not previously been argued to this court, a similar type of "piggy-backing" situation occurred in the recent case of *Beit Havurah* v. *Zoning Board of Appeals,* 177 Conn. 440, 418 A.2d 82 (1979). In that case an appeal was being taken from a decision of a zoning board of appeals which held that unlimited overnight accommodations by the plaintiff synagogue did not constitute an "accessory use" under the town zoning regulations. In its opinion, this court noted that the

failure of the defendants to appeal from an earlier decision of the zoning board of appeals on the issue of overnight accommodations had rendered the earlier decision final and that the correctness of that earlier decision was no longer subject to review by this or any other court. That principle appears equally applicable in the instant case.

Moreover, having examined the provisions of the Public Utility Environmental Standards Act, this court has come to the conclusion that there is no support in the act for the claim advanced by the plaintiffs. We note that the act has separate provisions governing the different types of application, i.e., §§ 16-50k (a), 16-50*l* (a) and 16-50*l* (c) control original applications for certificates, while §§ 16-50k (c), 16-50*l* (c) and 16-50m (b) control applications for amendment to existing certificates. The fact that the act provides for appellate review of orders issued in *each* of the above types of applications is further indication that the legislature did not intend that an application for amendment open, for all purposes, a previously issued decision granting such certificate. To adopt the position advanced by the plaintiffs would destroy the finality of the council's decisions and would not provide for prompt and binding determinations of public need and environmental impact.

We therefore conclude that the trial court did not err in concluding that the only decision properly before it in the October 1977 proceedings was the August 1977 decision upon the application for amendment.

The above conclusion is dispositive of this appeal, as the record amply supports the court's conclusion

that the plaintiffs were not in fact *aggrieved* by the August, 1977 decision in that their rights had not been *adversely* affected by that decision.

There is no error.

In this opinion the other judges concurred.