### PENNY URBANOWICZ ET AL. v. PLANNING AND ZONING COMMISSION OF THE TOWN OF ENFIELD ET AL.
### (AC 23314)

Schaller, Dranginis and Peters, Js.

Argued October 13, 2004—officially released February 8, 2005

*Thomas W. Fahey, Jr.*, for the appellant (defendant Leete-Stevens, Inc.).

*David A. Baram*, with whom was *Michael Hafkin*, for the appellees (plaintiffs).

*Matthew J. Willis*, for the defendant planning and zoning commission.

*Opinion*

DRANGINIS, J. The defendant Leete-Stevens, Inc. (Leete-Stevens), brought a certified appeal from the judgment of the Superior Court, sustaining the appeal by the plaintiffs, Penny Urbanowicz and Edward Sidor[1] from the decision of the defendant planning and zoning commission of the town of Enfield (commission) granting a special permit to Leete-Stevens. On appeal, Leete-Stevens claims that the trial court improperly concluded that (1) the appeal was not moot despite a 2001 amend-

---

[1] The trial court granted the motion filed by Urbanowicz to substitute Debra M. Shlatz, executrix of the estate of Edward Sidor, as a plaintiff. Sidor died while the appeal was pending in the Superior Court.

ment to General Statutes § 19a-320 (2001 amendment),[2] (2) the commission's approval of the special permit was appealable under General Statutes § 8-8 (a) and (b), (3) Urbanowicz was classically aggrieved, (4) the commission failed to comply with the applicable notice requirements and (5) the commission's action granting the special permit was void. Although we conclude that the court properly determined that it had subject matter jurisdiction to consider the plaintiffs' appeal and that the commission lacked jurisdiction to consider an amended application that Leete-Stevens filed for want of proper notice, we hold that the special permit was voidable, not void. We therefore reverse the judgment of the trial court and remand the matter with direction to remand it to the commission for further proceedings.

The court set forth the following undisputed facts in its memorandum of decision, which was filed on November 21, 2000. In May, 1998, Leete-Stevens, a corporation that provides mortuary services, filed an application with the commission requesting a special permit to operate a crematory and related equipment on its property located at 61 South Road in Enfield (town). The commission caused notice of the public hearing on the application to be published on May 23 and 30, 1998. The notice stated in relevant part: "PH1414.02— Special Use Permit for operation of a crematory and equipment at 9-1.8 Leete Stevens Enfield Chapels, 61 South Road (Map 73, Lot 88) R-33 zone Leete-Stevens, Inc. applct/owner. [Enfield Zoning Regs. §] 16-2.9 . . . ." The hearing was held on June 4, 1998.

At the June 4, 1998 hearing, the attorney representing Leete-Stevens stated that the application for the special permit had been filed pursuant to § 16-2.9 of the Enfield

[2] Public Acts, Spec. Sess., June, 2001, No. 01-4, § 28. Section twenty-eight took effect July 1, 2001.

zoning regulations,[3] but that it should have been filed pursuant to General Statutes § 19a-320. Members of the commission discussed whether Leete-Stevens should file another application and whether the hearing should be continued to the next date.[4] The commission, however, proceeded with the hearing, and Richard K. Stevens and a representative of the crematory manufacturer spoke on behalf of the special permit application. Urbanowicz and several other residents of the town spoke in opposition. At the conclusion of the June 4, 1998 hearing, the commission chairman stated that the hearing would be continued to June 18, 1998, for the submission of additional information. The commission failed to cause a notice of the hearing on the amended application to be published prior to the June 18, 1998 hearing.

At the commencement of the June 18, 1998 hearing, the attorney representing Leete-Stevens stated that he

[3] The Enfield zoning regulations provide in relevant part that a special permit is required for "[a]ll industrial and/or commercial uses which have as a primary activity the handling, use, treatment, processing, storage, incineration, or disposal of hazardous material(s)." Enfield Zoning Regs., § 16-2.9. The parties do not dispute that cremation of bodies of the dead constitutes the disposal of hazardous materials.

[4] At the June 4, 1998 hearing, Robert Burke, the town planner, stated: "What I see here is [that] the applicant is stating they are here under the authority of a different rule than the one which they originally put on their application. They both require public hearings, and they both require your approval, and I think that accurately reflects what [the attorney for Leete-Stevens] said. We have legally advertised it as it is written and as it was announced. If you continue with the hearing, I think there would be no harm personally in doing that and allowing everyone a chance to speak to this, but I would be cautious about closing the hearing and taking any action, and then ask the town attorney for an opinion. Because, as you know, in the past the town attorney has made some opinions about some legal notices that said [that] if they aren't accurate, the vote that you take would be null and void because of a technical problem with the legal ad. So, I think if you proceed with the hearing, it has been noted and put on the record what the problem is. You would just need to take that cautionary step, and if the town attorney thinks that it should be readvertised, we have also done that in the past and we would advertise it in a way that might be more appropriate and continue the hearing to the next date."

understood that notice of the hearing on the amended application had not been published, that notice would be published and that the hearing would be continued until July 2, 1998. He then inquired whether the commission would hear testimony, and he was informed that the commission would hear testimony at that time. The attorney for Leete-Stevens introduced the amended special permit application, which changed the location of the proposed crematory from lot 88 to lots 88 and 89 and indicated that the application was being submitted pursuant to § 19a-320, rather than the town's zoning regulations. The architect for the proposed crematory spoke in favor of the second application. Residents of the town spoke both for and against the granting of a special permit for the crematory. The commission continued the hearing until July 2, 1998.

On June 20 and 27, 1998, the commission caused notice of Leete-Stevens' second application for a special permit to be published. The notice stated in relevant part: "PH 1414.02—Application to locate, maintain and conduct a crematory at Leete-Stevens Enfield Chapels, 61 South Road and abutting land (Map 73, Lots 88 & 89) R-33 zone—Leete-Stevens, Inc. applct/owner. Sections 19a-320, Connecticut General Statutes." The commission concluded the hearing on the application for a special permit on July 2, 1998. On July 23, 1998, by a vote of four to three, the commission approved the application, stating that it was approving the special permit because the crematory was an accessory to the present use, that it met the requirements of current state statutes and that it would not have a negative effect on the neighborhood.

The plaintiffs appealed from the commission's decision pursuant to § 8-8 (a) and (b).[5] In response, Leete-

[5] The plaintiffs filed an eleven count amended appeal alleging improper notice of the second application, conflict of interest on the part of the commission, noncompliance with the special permit regulations, violation of a 1976 zoning stipulation entered into by Leete-Stevens and the commission,

Stevens filed a motion to dismiss the appeal, arguing that the Superior Court lacked subject matter jurisdiction to hear the appeal because § 19a-320 does not afford the right to appeal from the commission's decision regarding location. Leete-Stevens argued, in the alternative, that if the plaintiffs had the right to appeal, that right arose under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and that the plaintiffs had failed to allege facts sufficient to demonstrate classical aggrievement as required by the UAPA. The court, *McWeeny, J.*, denied the motion to dismiss, concluding that the commission's decision was appealable as a zoning decision under § 8-8 (a) and (b). In answering the plaintiffs' appeal, Leete-Stevens filed two special defenses. They again alleged the absence of subject matter jurisdiction. The court, *Gallagher, J.*, addressed the first special defense and agreed with Judge McWeeny that the appeal was brought properly under § 8-8 (a) and (b).[6] Leete-Stevens

violation of the town's residential zoning district, violation of the R-33 zone of the town's zoning regulations, violation of the town's hazardous materials zoning regulation, an invalid accessory use under the town's zoning regulations, failure to obtain inland wetland commission approval, violation of General Statutes § 19a-323 and improper site plan modification.

[6] General Statutes (Rev. to 1997) § 8-8 provides in relevant part: "(a) As used in this section: (1) 'Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board.

"(2) 'Board' means a municipal zoning commission, planning commission, combined planning and zoning commission, zoning board of appeals or other board or commission the decision of which may be appealed pursuant to this section, or the chief elected official of a municipality, or his designee, in a hearing held pursuant to section 22a-250, whose decision may be appealed.

"(b) Except as provided in subsections (c) and (d) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which

alleged, as a second special defense, that the plaintiffs were not aggrieved. Judge Gallagher concluded that Urbanowicz was statutorily and classically aggrieved.[7]

At trial, Leete-Stevens further argued that the commission was not required to publish a new notice of a continued hearing and that Leete-Stevens' "minor revision" to the application and site did not constitute a second application that required publication of notice. The court disagreed, finding that the original application was modified to include lot 89 and that the modification constituted a new application that required notice of the public hearing.[8] Citing *Lauer* v. *Zoning Commission*, 220 Conn. 455, 461, 600 A.2d 310 (1991), the court reasoned that when the notice required is constructive notice to the general public, failure to provide notice in the proper fashion is a defect implicating subject matter jurisdiction. The court therefore concluded that the commission's failure to publish notice regarding the amended application, which was to be considered at the June 18, 1998 public hearing, was a jurisdictional defect and that the special permit was void.

the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court. . . ."

[7] Leete-Stevens also argued that Debra M. Shlatz, as executrix of Sidor's estate, was not aggrieved. The court found that at the time the appeal was filed, Sidor, who was an adjoining landowner, was statutorily aggrieved and, thus, his estate was statutorily aggrieved. As the executrix of Sidor's estate, Shlatz properly was substituted as a plaintiff to represent the interests of Sidor's estate. See footnote 1.

[8] In its brief to this court, Leete-Stevens described the amount of land needed from lot 89 as a "narrow sliver," fifty-five feet by 442 feet. Those dimensions are consistent with those described on a map submitted to the commission, which indicates that the amount of land to be incorporated from lot 89 is more than one-half of an acre.

Thereafter, the parties filed numerous motions, including a motion filed by the plaintiffs to enforce the court's judgment, as Leete-Stevens had constructed and was operating the crematory as described in the second application. The court ruled on the motions in memoranda of decision, respectively, that will be addressed where relevant to the issues on appeal. On May 24, 2002, Leete-Stevens filed a petition for certification to appeal from the Superior Court's judgment sustaining the plaintiffs' appeal from the commission's granting Leete-Stevens a special permit. This court granted certification to appeal, and Leete-Stevens appealed.

Leete-Stevens' first two claims on appeal concern the Superior Court's subject matter jurisdiction to consider the appeal from the commission. We will address those claims simultaneously.

I

Leete-Stevens first claims that the court improperly concluded that the appeal was not moot due to the 2001 amendment to § 19a-320 and, second, that the court improperly concluded that the commission's granting Leete-Stevens a special permit was appealable under § 8-8 (a) and (b). We disagree, but address the claims in reverse order.

Leete-Stevens filed a motion to dismiss the appeal in the Superior Court, claiming that § 19a-320 did not provide for an appeal, but that if an appeal were permitted, it had to be brought pursuant to the UAPA, not our zoning statutes. Judge McWeeny concluded that the commission's decision was a zoning matter, appealable under § 8-8 (a) and (b). In sustaining the plaintiffs' appeal, Judge Gallagher also concluded, with respect to Leete-Stevens' first special defense, that the appeal was a zoning matter. Judge Gallagher cited the pertinent language of § 19a-230: "The location of such crematory . . . shall be within the confines of a plot of land

approved for the location of a crematory by the selectmen of any town . . . provided, in any town . . . having a zoning commission, such commission shall have the authority to grant such approval. . . ." General Statutes § 19a-320. She concluded that § 19a-320 (a) delegates authority to the commission to approve the location of the crematory.

On July 23, 2001, Leete-Stevens filed a motion to open the judgment and to dismiss the appeal. The legal basis of the motion to dismiss was grounded in the 2001 amendment to § 19a-320, which the legislature passed during a special session in June, 2001. The 2001 amendment provides: "This section shall not apply to any resident of this state or any corporation formed under the law of this state that was issued an air quality permit by the Department of Environmental Protection prior to October 1, 1998." Public Acts, Spec. Sess., June, 2001, No. 01-4, § 28 (Spec. Sess. 01-4). In support of its motion to open the judgment and to dismiss the appeal, Leete-Stevens argued that it is a Connecticut corporation that had obtained an air quality permit from the department of environmental protection prior to October 1, 1998. Consequently, because it met the criteria set forth in the 2001 amendment, it was exempt from the zoning process that was the subject of the appeal and that the appeal therefore was moot. The plaintiffs opposed the motion to open and to dismiss. The court denied the motion to open, reasoning that because the appeal properly was taken pursuant to § 8-8 (a) and (b), the question of subject matter jurisdiction was governed by the zoning statute, and the 2001 amendment had no effect on the court's jurisdiction.

We begin by addressing our standard of review. "A party may challenge a court's subject matter jurisdiction at any time, and whenever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to [its] previous rulings." (Internal quotation

marks omitted.) *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission*, 76 Conn. App. 199, 203, 821 A.2d 269 (2003). Whether the court has subject matter jurisdiction is a question of law to which the plenary standard of review applies. *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 611, 793 A.2d 215 (2002). Our decision is controlled by the relevant statutes. Statutory construction also is a question of law, requiring plenary review. *Tighe* v. *Berlin*, 259 Conn. 83, 89, 788 A.2d 40 (2002).

"The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Public Acts 2003, No. 03-154, § 1 (P.A. 03-154). We conclude that the meaning of the 2001 amendment is not clear and unambiguous. If the meaning of a statute is not plain, we apply the standard established in *State* v. *Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003). "The process of statutory construction involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) Id., 577.

### A

Our first step is to determine whether, as Leete-Stevens argues, the commission's granting the special permit was not appealable. If the decision was appealable, we then must determine the correct procedural vehicle. We conclude that the commission's granting Leete-Stevens' application for a special permit was appealable under our zoning statutes.

Leete-Stevens argues that § 19a-320, the statute governing the erection and maintenance of crematories, does not provide the right of appeal from the commission's decision. Section 19a-320 provides in relevant part: "(a) Any . . . corporation formed under the law of this state, may erect . . . a crematory in this state . . . . The location of such crematory shall . . . be within the confines of a plot of land approved for the location of a crematory . . . provided, in any town . . . having *a zoning commission, such commission shall have the authority to grant such approval.* (b) Application for such approval shall be made in writing to the local authority specified in subsection (a) and a hearing shall be held within the town . . . in which such location is situated within sixty-five days from the date of receipt of such application. *Notice of such hearing shall be given . . . by publication twice in a newspaper* having a substantial circulation in the town . . . . The local authority shall approve or deny such application . . . ." (Emphasis added.) General Statutes § 19a-320.[9]

---

[9] General Statutes (Rev. to 1997) § 19a-320 provides in relevant part: "(a) Any resident of this state, or any corporation formed under the law of this state, may erect, maintain and conduct a crematory in this state and provide the necessary appliances and facilities for the disposal by incineration of the bodies of the dead, in accordance with the provisions of this section. The location of such crematory shall be within the confines of an established cemetery containing not less than twenty acres, which cemetery shall have been in existence and operation for at least five years immediately preceding the time of the erection of such crematory, or shall be within the confines of a plot of land approved for the location of a crematory by the selectmen

With respect to Leete-Stevens' claim that the plaintiffs may not appeal from the commission's decision, we conclude that the words of the statute and their relationship to other statutes are plain and unambiguous. "We are constrained to read a statute as written . . . and we may not read into clearly expressed legislation provisions which do not find expression in its words . . . ." (Citations omitted; internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 494, 778 A.2d 33 (2001); see also *Miller's Pond Co., LLC* v. *Rocque*, 71 Conn. App. 395, 408, 802 A.2d 184 (2002) (court cannot read into statute provision that does not exist), aff'd, 263 Conn. 692, 822 A.2d 238 (2003). Section 19a-320 does not foreclose the right to appeal from the decision of the local authority with respect to the location of a crematory. We will not construe § 19a-320 to mean what it does not say.

Our conclusion that § 19a-320 does not foreclose the right to appeal from the decision of the commission is supported by its relation to § 8-8 (a) and (b). Subsec-

of any town, the mayor and council or board of aldermen of any city and the warden and burgesses of any borough; provided, in any town, city or borough having a zoning commission, such commission shall have the authority to grant such approval.

"(b) Application for such approval shall be made in writing to the local authority specified in subsection (a) and a hearing shall be held within the town, city or borough in which such location is situated within sixty-five days from the date of receipt of such application. Notice of such hearing shall be given to such applicant by mail, postage paid, to the address given on the application, and to the Commissioner of Public Health, and by publication twice in a newspaper having a substantial circulation in the town, city or borough at intervals of not less than two days, the first being not more than fifteen days nor less than ten days, and the second being not less than two days before such hearing. The local authority shall approve or deny such application within sixty-five days after such hearing, provided an extension of time not to exceed a further period of sixty-five days may be had with the consent of the applicant. The grounds for its action shall be stated in the records of the authority. Each applicant shall pay a fee of ten dollars, together with the costs of the publication of such notice and the reasonable expense of such hearing, to the treasurer of such town, city or borough."

tions (a) and (b) of § 19a-320 provide that a local authority, in this instance the commission, shall approve or deny an application for the location of a crematory. Subsections (a) and (b) of § 8-8 set forth the procedure by which to appeal from the administrative decisions of zoning commissions. Although *judicial* review of administrative decisions is generally governed by the UAPA, "[j]udicial review of the actions and decisions of a zoning commission . . . is governed by General Statutes §§ 8-9 and 8-8 rather than by the appeals provisions of the UAPA. *Ensign-Bickford Realty Co.* v. *Zoning Commission*, 245 Conn. 257, 263, 715 A.2d 701 (1998), citing *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 129, 653 A.2d 798 (1995)." (Internal quotation marks omitted.) *Christensen* v. *Zoning Board of Appeals*, 78 Conn. App. 378, 383–84, 827 A.2d 716 (2003).

Because § 19a-320 does not deny the right to appeal from a decision regarding the location of a crematory and § 8-8 provides the means to appeal from the decision of a zoning commission, the plaintiffs properly filed this appeal. We must construe statutes "consistently with other relevant statutes because the legislature is presumed to have created a coherent body of law." *Petco Insulation Co.* v. *Crystal*, 231 Conn. 315, 323–24, 649 A.2d 790 (1994). If the legislature had wanted to foreclose appeals from the decisions regarding the location of crematories, it could have done so, as it knows how to draft legislation in accordance with its intent. See *Monaco* v. *Turbomotive, Inc.*, 68 Conn. App. 61, 67, 789 A.2d 1099 (2002).

For the foregoing reasons, we conclude that the court had subject matter jurisdiction to hear the plaintiffs' appeal under § 8-8 (a) and (b).

### B

We now turn to Leete-Stevens' claim that the appeal to the court was moot due to the 2001 amendment to

§ 19a-320. Leete-Stevens argues that because its permit application fulfilled the factual predicate of the 2001 amendment, Leete-Stevens did not have to apply to the commission for permission to locate its crematory in the town. Consequently, Leete-Stevens continues, there was no practical relief that the court could have afforded the plaintiffs.[10] We disagree with Leete-Stevens' contention.[11]

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . Mootness applies to situations where events have occurred during the pendency of an appeal that make an appellate court incapable of granting practical relief through a disposition on the merits. . . . Because [an appellate] court has no jurisdiction to give advisory opinions, no appeal

---

[10] In denying Leete-Stevens' motion to open the judgment and to dismiss the appeal, the court restated its prior conclusion in the memorandum of decision that the appeal was brought properly pursuant to General Statutes § 8-8 (a) and (b), that subject matter jurisdiction is governed by that statute and that the 2001 amendment had no effect on the court's jurisdiction. The location of a crematory is a matter for local zoning approval.

[11] The plaintiffs represented in their brief to this court that Leete-Stevens had lobbied through its trade association for the 2001 amendment. Leete-Stevens did not deny the representation, but argued in its reply brief "that the legislature was keenly aware of the limited number of individuals who hold these very specific [environmental protection] permits when it decided to exempt them from local regulation." During oral argument, counsel for Leete-Stevens responded to a question from this court that he knew of no other individual or corporation who benefited from the 2001 amendment. Because we conclude that the appeal is controlled by General Statutes § 8-8 (a) and (b) and the parties did not address the question, we will not consider whether the 2001 amendment is a public emolument that violates article first, § 1, of the constitution of Connecticut. See *Warner* v. *Gabb*, 139 Conn. 310, 313, 93 A.2d 487 (1952) (state statute invalid under article first, § 1, only if it "directs the granting of an emolument or privilege to an individual or class without any purpose, expressed or apparent, to serve the public welfare thereby" [internal quotation marks omitted]).

can be decided on its merits in the absence of an actual controversy for which judicial relief can be granted." (Citation omitted; internal quotation marks omitted.) *Cole* v. *Planning & Zoning Commission*, 40 Conn. App. 501, 505–506, 671 A.2d 844 (1996). "The test for determining mootness of an appeal is whether there is any practical relief [the appellate] court can grant the appellant. . . . If no practical relief can be afforded to the parties, the appeal must be dismissed." (Internal quotation marks omitted.) *Taylor* v. *Zoning Board of Appeals*, 71 Conn. App. 43, 46, 800 A.2d 641 (2002). We agree with the commission that, although Leete-Stevens may fall within the factual predicate of the 2001 amendment, the issue is whether the 2001 amendment applied to the appeal to the court as a matter of law. We conclude that the court properly concluded that 2001 amendment did not render the appeal moot.

We apply our previously stated rules of statutory construction, i.e., that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of *the statute itself* and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd and unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Emphasis added.) P.A. 03-154. The 2001 amendment provides: "This *section* shall not apply to any resident of this state or any corporation formed under the law of this state that was issued an air quality permit by the Department of Environmental Protection prior to October 1, 1998." (Emphasis added.) Spec. Sess. P.A. 01-4, § 28. The use of the word *section*, rather than the word *subsection*, in the 2001 amendment effectively exempts any holder of an air quality permit issued by the department of environmental protection prior to October 1, 1998, from complying with § 19a-320, including the approval and annual inspections of crematories

by the department of environmental protection as required by General Statutes (Rev. to 1997) § 19a-320 (c). Our examination of the language of the 2001 amendment as it relates to § 19a-320 demonstrates that it creates an absurd and unworkable result. Leete-Stevens itself does not contend that it is exempt from the dictates of subsection (c).[12] The effect of the 2001 amendment also defies the state's public policy concerning air quality and the health, safety and welfare of the people of this state. See General Statutes §§ 22a-1 and 22a-15. We therefore turn to the legislative history of § 19a-320 and the 2001 amendment to determine the intent of the legislature.

We may consult the analysis of a bill by the office of legislative research to ascertain legislative intent. See, e.g., *Starks* v. *University of Connecticut*, 270 Conn. 1, 25 n.21, 850 A.2d 1013 (2004); *State* v. *Murray*, 254 Conn. 472, 494, 757 A.2d 578 (2000); *Burge* v. *Southington*, 219 Conn. 581, 594, 594 A.2d 945 (1991). The analysis of the 2001 amendment by the office of legislative research states: "By law, any crematory not operating on October 1, 1998, cannot be located within 500 feet of any residence or land used for residential purposes that is not owned by the crematory owner. The act exempts from this prohibition any state resident or corporation issued an air quality permit before October 1, 1998." This legislative analysis makes clear that the 2001 amendment was intended to exempt state residents and corporations that held air quality permits prior to October 1, 1998, from the prohibition against locating a crematory within 500 feet of a residence that they did not own. The 2001 amendment did not exempt any of the subject permit holders from any other dictates of § 19a-320,

---

[12] General Statutes (Rev. to 1997) § 19a-320 (c) requires that no crematory shall be erected until the plans therefor have been filed with and approved by the department of public health and that all crematories are subject to a fee and inspection.

including the requirement that the location of the crematory be approved by the appropriate local authority. We therefore conclude that, regardless of the 2001 amendment, Leete-Stevens must obtain permission from the commission prior to erecting a crematory in the town.

Furthermore, the appeal to the court was not moot because the 2001 amendment may not be given retroactive application. First, we note that Leete-Stevens filed its application for a special permit in May, 1998. The commission approved the special permit in July, 1998. An appeal was brought from the commission's decision, and the court decided the appeal on November 21, 2000. The 2001 amendment was passed during the June, 2001 special session of the legislature and was effective July 1, 2001. Leete-Stevens filed its motion to open the judgment and to dismiss the appeal on July 23, 2001.

"Whether to apply a statute retrospectively or prospectively depends upon the intent of the legislature in enacting the statute. . . . In order to determine the legislative intent, we utilize well established rules of statutory construction. Our point of departure is General Statutes § 55-3, which provides: No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect. The obligations referred to in the statute are those of substantive law. . . . Thus, [our Supreme Court has] uniformly interpreted § 55-3 as a rule of *presumed* legislative intent that statutes affecting *substantive* rights shall apply prospectively only." (Emphasis in original; internal quotation marks omitted.) *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 316, 702 A.2d 1180 (1997). To determine whether the 2001 amendment applies to Leete-Stevens' application for a special permit, we must decide whether it is substantive or procedural in nature. Procedural or

remedial amendments to statutes generally have retroactive application while substantive amendments affecting the rights of the parties may be applied only prospectively. Id., 316–17.

We conclude that the 2001 amendment is substantive in nature because it changed the authority of the commission to approve the location of a crematory within 500 feet of a residence if the application is submitted by the holder of an air quality permit issued prior to October 1, 1998, who owns the subject land. In arguing that the appeal was moot, Leete-Stevens sought to take advantage of a right it did not have at the time it filed its application for a special permit with the commission. Because the 2001 amendment is substantive in nature, it may not be applied retrospectively.

We also are mindful that § 19a-320 directs the appropriate local authority within a city, town or borough to approve the location of a crematory within municipal borders. In this instance, Leete-Stevens' application for a special permit is subject also to the town's regulations. "Where the state legislature has delegated to local government the right to deal with a particular field of regulation, the fact that a statute also regulates the same subject in less than full fashion does not, ipso facto, deprive the local government of the power to act in a more comprehensive, but not inconsistent, manner." (Internal quotation marks omitted.) *Dwyer* v. *Farrell*, 193 Conn. 7, 12, 475 A.2d 257 (1984). The legislative history of § 19a-320 indicates that local authorities should decide the location of crematories not sited within a cemetery.[13] Here, the location of a crematory

---

[13] "The department would like first to introduce a substitute on this bill so that it will go into effect at once. The present law places before the State Department of Health for approval not only the construction plans but location also. This bill would put the location up to the local authorities and only construction plans to the Department of Health. The department and Public Health Council approve the bill. We feel the local communities should be the ones to say whether it should be built in their community or not." Conn. Joint Standing Committee Hearings, Public Health and Safety,

is subject to the town's zoning regulations concerning hazardous waste. See footnote 3.

For the foregoing reasons, the court properly concluded that the appeal was not moot because there was practical relief the court could grant the plaintiffs.

II

Leete-Stevens' third claim is that Urbanowicz is not classically aggrieved and therefore has no standing to appeal from the decision of the commission. This claim arises out of Leete-Stevens' claim that the plaintiffs' appeal—if the plaintiffs are permitted to appeal—must be brought under the UAPA. We need not address this claim because we concluded in part I A that the plaintiffs properly brought their appeal pursuant to § 8-8 (a) and (b), which control zoning appeals. Section 8-8 (a) (1) provides in relevant part that " 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." Leete-Stevens does not dispute that, as abutting landowners, the plaintiffs are aggrieved within the terms of the zoning statute. Consequently, whether Urbanowicz is classically aggrieved by the action of the commission is not relevant to this appeal. See *Bankers Trust of California, N.A.* v. *Neal*, 64 Conn. App. 154, 156, 779 A.2d 813 (2001) (academic questions do not present justiciable issues).

III

Leete-Stevens also claims that the court improperly concluded that the commission failed to comply with the statutory notice requirements. We do not agree.

We briefly restate the relevant facts. On May 13, 1998, Leete-Stevens submitted an application for a special

1945 Sess., p. 32, remarks of W. J. Scott, director of bureau of sanitary engineers, state department of health.

permit to erect a crematory on its premises at 61 South Road, lot 88, pursuant to § 16-2.9 of the Enfield zoning regulations. The commission gave notice of the public hearing. At the hearing that was held on June 4, 1998, Leete-Stevens, through its attorney, verbally modified its application to delete § 16-2.9 and substitute General Statutes § 19a-320 as the authority under which the application was being submitted. Despite the change, the commission heard testimony on the application and continued the hearing. On June 5, 1998, Leete-Stevens submitted written changes to its application for a special permit, adding the words "lot 89" and "abutting land," and changing the authority from § 16-2.9 of the zoning regulations to General Statutes § 19a-320. The commission held a second public hearing on Leete-Stevens' application on June 18, 1998, but without causing notice of the hearing to be published. The commission caused notice of the public hearing on the amended application to be published prior to the continued hearing that was held on July 2, 1998.

Section 19a-320 (b) requires the local authority specified in subsection (a) to hold a hearing on an application to erect a crematory. "Notice of such hearing shall be given to such applicant . . . the Commissioner of Public Health, and by publication twice in a newspaper having a substantial circulation in the town . . . ." General Statutes § 19a-320 (b); see also General Statutes § 8-3 (a) (notice requirement for zoning changes). The court in this case concluded that the application was amended to include abutting land, that the amendment constituted a new application and that publication of notice of a public hearing on that application was required.

As in *Lauver* v. *Planning & Zoning Commission*, 60 Conn. App. 504, 760 A.2d 513 (2000), the questions before this court are whether the trial court properly concluded that the original application for a special

permit and the amended application were separate and distinct and, therefore, required separate legal notice and whether the trial court correctly concluded that the commission's granting of the special permit was illegal for want of proper notice. See id., 508. We answer those questions in the affirmative.

"The scope of review of a trial court's factual decision on appeal is limited to a determination of whether it is clearly erroneous in view of the evidence and pleadings. . . . Conclusions are not erroneous unless they violate law, logic or reason or are inconsistent with the subordinate facts." (Internal quotation marks omitted.) Id., 509.

Statutory notice "requirements are for the protection of property interests and therefore implicate rights of due process. . . . Our courts have consistently refused to consider the adequacy of public notice to be a merely procedural matter and have unwaveringly treated failure to give proper public notice as a jurisdictional defect. . . . Compliance with the notice procedures requiring that the time of a scheduled public hearing be published at least twice, is a prerequisite to valid zoning authority actions. . . . Without proper public notice, zoning authority actions are null and void. . . .

"A notice is proper only if it fairly and sufficiently apprises the public of the action proposed, making possible intelligent preparation for participation in the hearing. . . . Not all flaws in the notice are fatal; for example, the notice need not describe the proposed action with exactitude." (Citations omitted.) *Cocivi* v. *Plan & Zoning Commission*, 20 Conn. App. 705, 707, 570 A.2d 226, cert. denied, 214 Conn. 808, 573 A.2d 319 (1990). "The public is entitled to constructive notice of commission hearings and a defect is not cured merely because some members of the public received actual notice or in fact appeared at the hearing." Id., 708.

"Compliance with prescribed notice requirements is a prerequisite to a valid action by a zoning board of appeals and failure to give proper notice constitutes a jurisdictional defect." (Internal quotation marks omitted.) *Nazarko* v. *Zoning Commission,* 50 Conn. App. 517, 519, 717 A.2d 853, cert. denied, 247 Conn. 941, 723 A.2d 318 (1998). "Strict compliance with statutory mandates regarding notice to the public is necessary." (Internal quotation marks omitted.) *Lauver* v. *Planning & Zoning Commission,* supra, 60 Conn. App. 509. "The burden of proving that the notice was defective rests on the persons asserting its insufficiency." *Nazarko* v. *Zoning Commission,* supra, 520. Both *Nazarko* and *Lauver* are instructive.

In *Nazarko,* the applicant was a sporting club seeking to operate a skeet shooting range on its property and to widen the access road. Id., 518. The published notice identified the subject property as being off a certain road in East Lyme, lot 10 on the assessor's map. Id. On appeal, the trial court found that the sporting club owned two parcels of land and that it sought to move the skeet shooting range to lot 10 from lot 9. Id., 520. This court affirmed the judgment of the trial court, concluding that "the notice was insufficient in that it describes the subject property as lot ten on the assessor's map without referring to lot nine, even though the applicant seeks a special exception to improve an access driveway that traverses both parcels." Id. Likewise, in *Lauver* v. *Planning & Zoning Commission,* supra, 60 Conn. App. 506–507, the commission reviewed an application preliminarily and requested that the applicant provide a better description of the land and provide a map, and that lot numbers be added to the application. The commission only caused notice of the original application to be published. Id. This court sustained the trial court's conclusion that the amended

application was different from the original one and required its own notice. Id., 506–11.

In the case before us now, Leete-Stevens amended its application for a special permit. In its amended application, it sought to change the boundary between lots 88 and 89. It added the term "abutting land" and changed the legal authority under which it was submitting the application. The commission failed to cause notice of the public hearing on the amended application to be published in accordance with § 19a-320. We conclude that the addition of lot 89 and "abutting land" to the application to adjust the boundary between lots 88 and 89 constituted a new application that required its own notice.

## IV

Leete-Stevens' final claim is that the court improperly declared the special permit void without remanding the application for further proceedings. Without a remand, Leete-Stevens argues, it must submit another application. We agree.

By failing to give proper notice of the amended application, the commission's action in approving the permit was a nullity. See *Koepke* v. *Zoning Board of Appeals*, 223 Conn. 171, 178, 610 A.2d 1301 (1992). The court should have remanded the case to the commission with instructions to give proper notice and to conduct a public hearing on the amended application. See *Lauver* v. *Planning & Zoning Commission*, supra, 60 Conn. App. 515. We therefore remand the case to the Superior Court for that purpose.

The judgment is reversed and the case is remanded with direction to remand the matter to the commission for further proceedings consistent with this opinion.

In this opinion the other judges concurred.