WINDSOR LOCKS ASSOCIATES *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN OF
WINDSOR LOCKS ET AL.
(AC 22842)

Lavery, C. J., and Flynn and Berdon, Js.

Argued January 6—officially released July 19, 2005

*Gwendolyn Bishop*, with whom were *Christopher R. Stone*, town attorney, and, on the brief, *Paul W. Smith*, for the appellant (named defendant et al.).

*Marc J. Kurzman*, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendant PRF of Connecticut, Inc. (PRF), appeals from the judgment of the trial court

sustaining the appeal of the plaintiff, Windsor Locks Associates, from the decision of the defendant planning and zoning commission (commission)[1] of the town of Windsor Locks approving PRF's application for a site plan involving a valet parking facility and construction of a hotel. On appeal, PRF claims that the court improperly (1) considered the issue of whether a valet parking lot on the subject property was a legal nonconforming use because that issue had been adjudicated in a prior administrative hearing from which the time to appeal had expired and (2) determined that the plaintiff was not collaterally estopped from relitigating the issue of the valet parking lot's legality. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the appeal. In 1999, PRF, along with another entity,[2] applied to the commission for approval of a site plan for property located near Bradley International Airport and in the town's business 1 zone. The site plan contemplated moving an existing valet parking lot from the front to the rear of the property and constructing a hotel in the original location of the parking lot.[3] The commission ultimately approved the site plan on August 14, 2000, and an appeal by the plaintiff followed.[4] The plaintiff owns property contiguous to the property to

---

[1] The commission is a party to this appeal, but has not filed a separate appellate brief. Rather, it joined in the brief filed by PRF.

[2] The other entity, the defendant Windsor Locks Suites, LLC, is not a party to this appeal.

[3] As noted by the court in its memorandum of decision, the valet parking lot is of a type known popularly as a "park, ride and fly" lot intended to "provide parking and transportation to and from the airport for customers who need to park their vehicles for extended periods of time while traveling. Such a lot is not an accessory to a hotel or other business, but rather is a stand-alone business."

[4] The commission initially approved the application in December, 1999, but that approval was reversed on appeal due to defective notice of the commission's decision. The application was resubmitted thereafter.

which the site plan pertains and is, therefore, statutorily aggrieved. See General Statutes § 8-8 (a) (1).

The plaintiff raised several claims in its appeal, but the court found one claim dispositive. Specifically, the court agreed that the operation of the valet parking lot on the subject property was an illegal, nonconforming use and, accordingly, the commission lacked authority to approve a site plan allowing for the continuance of such use. In reaching its decision, the court reviewed the town's zoning regulations promulgated in 1976, 1987, 1990, 1993 and 1998 and determined that none of them allowed for the operation of a valet parking lot in a business 1 zone. It noted that the commission's approval of the continuance of the valet parking lot as part of the site plan was premised on the assumption that the lot is a legal nonconforming use. The court found that there was no evidence in the record to show that use of the premises as a valet parking lot predated promulgation of the 1976 regulations disallowing such use or that such use ever was authorized by regulation or variance.[5] It further found that use of the property for valet parking commenced at some time subsequent to 1982. Accordingly, the court concluded that the valet parking lot was an illegal nonconforming use.

The defendants did not present any evidence in support of their contention that the valet parking lot was a legal nonconforming use.[6] Rather, they argued that a prior administrative decision concerning the property precluded the court from reaching that issue. Specifi-

---

[5] The court in its memorandum of decision credited information in the record indicating that in 1982, a prior owner of PRF's property had secured approval of a site plan and a building permit for use of the property as an accessory parking lot for a hotel on the property now owned by the plaintiff. Approval was granted for a parking lot for the "public, banquets, functions and employees" of the hotel, but not, however, for a valet parking lot.

[6] Consistently, PRF on appeal does not contest the court's findings as to the lot's illegality.

cally, on April 13, 1995, the town's zoning enforcement officer (officer) had issued a cease and desist order against PRF on the basis of information that he had received indicating that PRF had abandoned use of the property as a valet parking lot and then, apparently, had resumed that use. The officer's information had come from two individuals who owned other valet parking facilities in the area. Pursuant to the town's zoning regulations, "[w]here there is a non-use of a non-conforming use for a period of six (6) months, the use shall be deemed abandoned, unless there be proof offered of intent not to abandon such non-conforming use," and "[n]o non-conforming use which has been abandoned shall be thereafter resumed. . . ." Windsor Locks Zoning Regs., c. viii, § 804.

PRF appealed from the cease and desist order to the town's zoning board of appeals (board), arguing that the valet parking lot had not ceased operating for six months and that there was no intent to abandon use of the property as a valet parking lot. After evidence was presented at a hearing held on July 11 and 18, 1995, the board agreed with PRF's contentions and rescinded the officer's order.

Thereafter, the competing valet parking lot owners appealed from the board's decision to the Superior Court. In a July 8, 1996 memorandum of decision, the court, *Holzberg, J.*, granted PRF's motion to dismiss the appeal. *Northeast Parking, Inc.* v. *Zoning Board of Appeals*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 469143 (July 8, 1996). Therein, the court found that the competing owners' claimed injury to their business interests as a result of the board's decision was not enough to establish aggrievement so as to confer on them standing to appeal from that decision.[7] The court consequently did not reach the merits of the competing owners' appeal.

---

[7] The competing valet parking lot owners were not statutorily aggrieved because, as found by the court, their business was across the street and

The plaintiff in this case was not a party to the proceedings before the board or to the appeal from the board's decision, and the court in this matter so found. It found further that the issue of whether PRF's valet parking lot was a legal nonconforming use "was not litigated and . . . played no significant role in the court's decision on the motion to dismiss." On the basis of those findings, the court rejected PRF's contention that the plaintiff was precluded from raising that issue in the present proceedings. This appeal followed.

I

PRF argues first that the court improperly considered the issue of the legality of the use of its property as a valet parking lot because that issue had been adjudicated in a prior administrative hearing. It claims that the issue of the lot's legality was brought before the board when PRF appealed from the cease and desist order concerning abandonment. It argues that the plaintiff could have participated in the public hearing that was held and, as an aggrieved neighboring property owner, could have appealed from the decision that resulted. According to PRF, because the plaintiff did not file an appeal from the board's decision within fifteen days as required by statute, the decision became final and the court therefore lacked jurisdiction to consider any appeal therefrom. That argument lacks merit.

We begin with the applicable standard of review. Although PRF's claim was not raised in the trial court, "[a] party may challenge a court's subject matter jurisdiction at any time, and whenever a court discovers that it has no jurisdiction, it is bound to dismiss the

more than 100 feet from PRF's property. See General Statutes § 8-8 (a) (1). Standing alone, a claim of increased business competition resulting from a zoning decision is insufficient to establish classical aggrievement. See, e.g., *Mott's Realty Corp.* v. *Town Plan & Zoning Commission*, 152 Conn. 535, 537, 209 A.2d 179 (1965); *Whitney Theatre Co.* v. *Zoning Board of Appeals*, 150 Conn. 285, 277–78, 189 A.2d 396 (1963).

case . . . ." (Internal quotation marks omitted.) *Urbanowicz* v. *Planning & Zoning Commission*, 87 Conn. App. 277, 286, 865 A.2d 474 (2005). "Whether the court has subject matter jurisdiction is a question of law to which the plenary standard of review applies." Id., 287.

Jurisdiction over appeals from the decisions of zoning entities is conferred on the Superior Court by statute. See General Statutes § 8-8. Pursuant to § 8-8 (b), if a party aggrieved by a decision of a zoning board wants to file an appeal from that decision, it must commence that appeal within fifteen days of the date on which notice of the decision was published. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) *Bridgeport Bowl-O-Rama, Inc.* v. *Zoning Board of Appeals*, 195 Conn. 276, 283, 487 A.2d 559 (1985). Accordingly, "[i]f the appeal period has expired when an appeal is filed the trial court lacks jurisdiction over the appeal." *Cardoza* v. *Zoning Commission*, 211 Conn. 78, 82, 557 A.2d 545 (1989).

PRF does not complain that the plaintiff failed to file its appeal within fifteen days of publication of notice of the commission's decision approving PRF's site plan. Rather, it endeavors to cast the plaintiff's claim as one contesting the 1995 decision of the board that rescinded the cease and desist order issued against PRF. That characterization is based on a hypothetical rather than on the actual state of affairs and, as such, clearly is inapt. By its plain terms, the plaintiff's appeal challenges the decision of the commission approving PRF's site plan. The commission, not the board, is named as a defendant, and the multiple errors alleged all pertain to the commission's approval of the site plan. Insofar as the continuation of the valet parking lot operation was one of the uses of the property contemplated by

the site plan, a claim pertaining to the lot's illegality is appropriately raised in an appeal from the decision approving the site plan.

The cases cited by PRF in support of its argument are distinguishable in that each involved a party attempting to challenge in a later proceeding some decision arrived at in a prior proceeding from which no appeal was filed. On appeal, each attempt to collaterally attack the decision in a separate proceeding or action was disallowed. For example, in *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 616 A.2d 793 (1992), the plaintiff did not appeal when a zoning permit was issued to challenge a condition included therein, but attempted to raise that challenge three years later in an appeal from a cease and desist order concerning the plaintiff's violation of the condition. Id., 101–104. In *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 409 A.2d 1029 (1979), the plaintiff did not appeal timely from a zoning commission's implicit approval of a subdivision plan, but instead brought an action for equitable relief, arguing that the commission's action was void and seeking to enjoin the subdivision of the property at issue. In *Haynes* v. *Power Facility Evaluation Council*, 177 Conn. 623, 419 A.2d 342 (1979), the plaintiffs did not appeal from the issuance of a certificate of environmental compatibility regarding a proposal that affected their property, but attempted to contest that issuance by appealing from a later amendment to the certificate, the approval of which did not aggrieve them. Id., 625–30.[8]

In each of those cases, the plaintiffs were held to be foreclosed in later proceedings from contesting the very

---

[8] The last case cited by PRF, *Beit Havurah* v. *Zoning Board of Appeals*, 177 Conn. 440, 418 A.2d 82 (1979), is factually inapposite in that it involved a board, not an applicant or other aggrieved party, effectively attempting to revisit a decision it had reached in a prior proceeding. Accordingly, no forgone right to appeal was at issue.

decisions from which they previously had declined to appeal. Here, in contrast, the plaintiff has timely appealed from the decision of the commission approving PRF's site plan and is not attempting to contest the board's prior decision rescinding the cease and desist order. On the basis of the foregoing analysis, we conclude that PRF's first claim must fail.

## II

PRF next claims that the court improperly failed to find that the plaintiff was collaterally estopped from litigating the issue of whether the valet parking lot was an illegal nonconforming use. It argues that all of the requirements for collateral estoppel to apply were met because the "identical" issue had been addressed in the hearing before the board regarding the cease and desist order and the plaintiff had received notice and the opportunity to participate in the prior proceeding and, further, was in privity with other parties to that proceeding, namely, the competing valet parking lot owners. We disagree.

Whether collateral estoppel is applicable under a given set of facts is a question of law that we review de novo. *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 686, 846 A.2d 849 (2004); *Waterbury Equity Hotel, LLC* v. *Waterbury*, 85 Conn. App. 480, 493, 858 A.2d 259, cert. denied, 272 Conn. 901, 863 A.2d 696 (2004). "[C]ollateral estoppel, or issue preclusion . . . prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim." *Efthimiou* v. *Smith*, 268 Conn. 499, 506, 846 A.2d 222 (2004). "An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982)." *Efthimiou* v.

*Smith,* supra, 507; *Dontigney* v. *Commissioner of Correction,* 87 Conn. App. 681, 685, 867 A.2d 93 (2005). "A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action." 1 Restatement (Second), [supra, § 27, comment (e)]; see also 46 Am. Jur. 2d, Judgments § 541 (1995).

Here, Judge Holzberg dismissed the competing valet parking lot owners' appeal from the decision of the board because they lacked standing to file that appeal; the merits of the appeal were never litigated. Consequently, PRF argues that it is the board's decision itself that should have been given preclusive effect. It is true that the doctrine of collateral estoppel may apply to give preclusive effect to administrative rulings as well as to court judgments. See *Cumberland Farms, Inc.* v. *Groton,* 262 Conn. 45, 61–62, 808 A.2d 1107 (2002); *Hill* v. *State Employees Retirement Commission,* 83 Conn. App. 599, 602, 851 A.2d 320, cert. denied, 271 Conn. 909, 859 A.2d 561 (2004). Nevertheless, we conclude that in the circumstances of this case, the basic requirements of collateral estoppel are lacking.

First, the issue raised in the present action, i.e., the legality of the valet parking lot as a preexisting nonconforming use, differs from those litigated before the board, i.e., whether PRF had abandoned use of its property as a valet parking lot for six months and had intended such abandonment. In the proceedings before the board, the legality of the valet parking lot to begin with apparently was assumed. We note particularly that the zoning officer's letter to the principals of PRF directing them to cease and desist operations did not mention the lot's initial legality, but focused on abandonment. Only the regulation pertaining to abandonment was cited. Similarly, a letter from PRF's counsel notifying the board that PRF intended to appeal from the officer's order included argument addressed solely to the issue

of abandonment. Finally, transcripts of the two public hearings at which PRF's appeal was heard by the board reveal that the only topic on which it took evidence and considered was PRF's purported abandonment of the use of its property for valet parking; the legality of the lot's nonconformity was not discussed. In sum, the issue of legal nonconformance was not raised, submitted or determined by the board.

"For collateral estoppel to apply, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding." (Internal quotation marks omitted.) *State v. Joyner*, 255 Conn. 477, 490, 774 A.2d 927 (2001). Further, "[t]he [party seeking estoppel] has the burden of showing that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." (Internal quotation marks omitted.) *Dowling v. Finley Associates, Inc.*, 248 Conn. 364, 377, 727 A.2d 1245 (1999). Here, it is clear that the issues before the board and the commission were not identical and that the issue of legal nonconformance was not actually decided. Hence, PRF has not met its burden.

Next, it is equally apparent that the plaintiff is not in privity with the competing valet parking lot owners who caused the cease and desist order to be issued and participated in the proceedings before the board. " 'Privity is not established . . . from the mere fact that persons may happen to be interested in the same question or in proving or disproving the same facts.' 46 Am. Jur. 2d, [supra] § 532. While the concept of privity is difficult to define precisely, it has been held that a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity." (Internal quotation marks omitted.) *State v. Fritz*, 204 Conn. 156, 173, 527 A.2d 1157 (1987). "[C]ollateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent

the same legal rights so as to justify preclusion." (Internal quotation marks omitted.) *Lundborg* v. *Lawler*, 63 Conn. App. 451, 456, 776 A.2d 519 (2001).

Here, the plaintiff and the competing valet parking lot owners possess different legal rights and have diverging interests such that it cannot be said that they are in privity. As mere business competitors of PRF, the parking lot owners lack the statutory rights conferred on contiguous property owners such as the plaintiff. See General Statutes § 8-8 (a) (1). Moreover, the record indicates that the competing owners likely lacked the incentive to raise the issue of whether PRF's valet parking lot was an illegal nonconforming use. Specifically, in his memorandum of decision dismissing the appeal from the board's decision, Judge Holzberg referred repeatedly to the competitors' "understanding" that both they and PRF were valid nonconforming users, an understanding that apparently had not been confirmed officially. Insofar as a successful challenge to the status of PRF's nonconformity could have led to a similar result vis-a-vis the competing valet parking lots, there existed a strong disincentive to the raising of that challenge. Cf. *Young* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 107, 117, 758 A.2d 452 (finding no privity between primary insurer, excess carrier because former lacked incentive to contest damages beyond its maximum exposure), cert. denied, 255 Conn. 906, 762 A.2d 912 (2000). At best, the plaintiff and the competing valet parking lot owners share only an interest in proving or disproving similar facts, a commonality insufficient to establish privity. See *State* v. *Fritz*, supra, 204 Conn. 173.

As to PRF's claim that the plaintiff received notice and had the opportunity to participate in the proceedings before the board, we note that an unexercised right to participate does not result in preclusion. See *Young* v. *Metropolitan Property & Casualty Insurance Co.*,

supra, 60 Conn. App. 115 (defendant not precluded from contesting arbitration findings by declining invitation to participate in arbitration when not contractually obligated to do so); see also 47 Am. Jur. 2d, supra, § 659 ("right to intervene in an action does not, in the absence of its exercise, subject one possessing it to the risk of being bound by the result of the litigation").

"[T]he 'crowning consideration' in collateral estoppel cases and the basic requirement of privity [is] that the interest of the party to be precluded must have been sufficiently represented in the prior [proceeding] so that the application of collateral estoppel is not inequitable. . . . A [proceeding] in which one party contests a claim against another should be held to estop a third person only when it is realistic to say that the third person was fully protected in the first [proceeding]." (Citation omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 818, 695 A.2d 1010 (1997). "The reason for the rule lies in the deep-rooted fundamental doctrine of the law that a party to be affected by a personal judgment must have a day in court and an opportunity to be heard on the matter." 47 Am. Jur. 2d, supra, § 641.

The plaintiff in this matter was not sufficiently represented or fully protected in the proceedings before the board by virtue of the participation of the competing valet parking lot owners. The court properly afforded it a day in court and an opportunity to be heard regarding the legality of PRF's nonconforming use. On the basis of the foregoing analysis, we conclude that PRF's collateral estoppel argument must fail.

The judgment is affirmed.

In this opinion the other judges concurred.